CASE 31—ACTION BY VANCEBURG & S. L., TURNPIKE ROAD COMPANY AGAINST MAYSVILLE & B. S. R. R. CO. AND BY JOHN L. BRUCE AND OTHERS AGAINST THE TURNPIKE COMPANY.—JAN. 13.

# Vanceburg & S. L. Turnpike Road Co. v. Maysville & B. S. R. R. Co.
## Same v. Bruce, &c

APPEAL FROM LEWIS CIRCUIT COURT.

FROM THE JUDGMENT IN BOTH ACTIONS THE TURNPIKE COMPANY APPEALS.  REVERSED.

TURNPIKE TAX—ASSESSMENT—LAW OF THE CASE—EFFECT OF INVALIDITY—TAXATION IN TWO DISTRICTS—COMPANY'S SURRENDER OF FRANCHISE—UNAUTHORIZED INDEBTEDNESS—DEFENSES TO TAX—DIFFERENT ASSESSMENTS—ELECTION—RAILROAD PROPERTY—TAXATION THEREON.

Held:   1. Where on a former appeal the court of appeals has determined that the method of assessing a turnpike aid tax, provided in Acts 1889-90, vol. 2, p. 1385, c. 1034, is unconstitutional, the question can not be considered on the present appeal.

Vanceburg & S. L. Turnpike R. Co. v. Maysville & B. S. R. R. Co.
. Same v. Bruce, &c.

2. A turnpike tax assessment, void because made by an unauthorized person, does not prevent a reassessment by the county assessor; the case standing merely as an omission by that officer of an assessment he should have made.

3. The fact that a county assessor, in assessing turnpike aid taxes, after a void assessment thereof, does not again call on the taxpayers to list their property, does not invalidate the assessments; they having been called on each year when the regular county assessment was made for a list of their property.

4. Kentucky Statutes, 1903, section 4736, providing that, where property is situated in more than one turnpike taxing district, it shall be liable only in the district whose turnpike affords it the greater benefit as determined by the fiscal court or county commissioners, does not prevent the collection of a turnpike tax levied by the company's charter on all property in the district, where the taxpayer has not applied to the fiscal court or board of county commissioners, and secured an adjudication exonerating his property.

5. Kentucky Statutes, 1903, section 4748b, subsec. 8, provides that, when a turnpike is sold to the county, the company's charter and franchise are at once at an end. Section 4306 gives the fiscal court general charge and supervision of the public roads in the county. HELD, that the lease of a turnpike built partly on a county road to the county until the turnpike company should have sufficient funds to complete and maintain it did not terminate the company's charter and franchise.

6. The charter of a turnpike company provided that it should not issue any written obligations of indebtedness, or contract for the construction of any part of the road, until the aid tax, stock subscriptions, etc., should be sufficient to meet such contract of construction, etc. HELD, that the fact that the directors had borrowed money individually, which was used in constructing the road, before the company's resources met the charter requirement, was not a defense to a taxpayer when sued, before the road's completion, for the aid tax levied by the Legislature for the building of the road.

7. In a suit to collect a turnpike aid tax on railroad property, the turnpike company set up an assessment for each year, both by the county commissioners, as authorized by its charter (Acts 1888-90, vol. 2, p. 1385, c. 1034), and by the railroad commission, as authorized by Acts 1891-93, p. 308, and made applicable (section 7) to all assessments of railroads, and prayed the judgment of the court as to which was valid. HELD, that the assessment by the railroad commission being under the later stat-

.Vol. 117]    JANUARY TERM, 1904.    **277**

:Vanceburg & .S. L. Turnpike ,R. Co. v. Maysville & B. .S. R. R. Co.
Same v. Bruce, &c.

ute, and therefore valid, and the allegatijon as to the assess-
ment by the county commissioners being merely surplusage, it
was error to require the company to elect on which it would
rely.

8. Under Acts 1891-93, p. 308, art. 4, section 7, providing that the
same rate of taxation levied on other realty in any year shall
also be levied on railroad property, a turnpike aid tax can
not be collected from a railroad for years in which no assess-
ment thereof on individual property was made.

A. E. COLE & SON, A. D. COLE, W. C. HALBERT, E. L. WORTH-
:INGTON, FOR APPELLANT.

1. Since the constitutionality of appellant's charter was es-
tablished in all respects save one on a former appeal, (35 S.
W., 112), it would seem to be no longer an open question, but
even if it were, the terms "due process of law," as used in the
iFederal .Constitution, and "the law of the land" as used in
the State (Constitution, have never been construed to invest the
citizens with the right of hearing, notice of appeal, as applied
to the taxing power of the State. Murray v. Hoboken Land
Imp. Co., 18 How., 276; McMillen v. Anderson, 95 U. S., 37;
Davidson v. New Orleans, 96 U. S., 101; High v. Shoemaker,
22 Cal., 370; Weiman v. Bunbury, 30 Mich., 211; Griffin v.
Dogan, 48 Miss., 17; Doe v. Deavors, 11 .Ga., 82; Cooley Tax,
39; Ky. R. R. Tax Cases, 115 U. S., 321; Gallup v. Schmidt,
U. S. S. .C. Rep., Law Ed., vol. 46, p. 213.

2. The power of the State in the whole question of regulating
and apportioning its taxes, has uniformly been held unlimited.
McCullough v. Maryland, 4 Wheat., 428; Providence Bank v.
Billings, 4 Pet., 563; ISt. Louis v. Ferry Co., 11 Wall., 429;
State Tax on Foreign .Held Bonds, 15 Wall., 319; Kertland v.
Hotchkiss, 182 U. S., 491; Youngblood v. Sexton, Mich., 415.

3. The fact that the stockholders temporarily leased its road
to the fiscal court of ·Lewis county, with the right to use, oc-
cupy and control it as a public road, does not *ipso facto* dis-
solve the corporation. The essential difference between a lease
and deed of conveyance is self evident.

4. Section 4736, Kentucky Statutes, was not intended to re-
lieve a taxpayer whose land lies in two districts, from paying
taxes in both districts if there were no *general* system of taxes
for turnpike purposes in a given county. But where a tax-
payer's land lies in two districts in both of which he pays taxes,
the Legislature thought it would be inequitable to impose upon

Vanceburg & S. L. Turnpike R. Co. v. Maysville & B. S. R. R. Co.
Same v. Bruce, &c.

such a taxpayer a third tax, and therefore, when such a condition exists, the taxpayer is afforded relief if he *desires it* by applying to the fiscal court to determine from which district he derives the most benefit, and thereafter he would not be assessed in the other district.

5. Where the language of a statute is ambiguous and admits of more than one construction, that one may be adopted, which will avoid the greatest inconvenience. Divine v. Harris, 7 T. B. Mon., 444; Reg. v. Tondridge, 13 Q. B. Div., 342; Carolina Sav. Bank v. Evans, 28 S. C., 521.

WADSWORTH & COCHRAN, FOR APPELLEE.

CLASSIFICATION OF POINTS AND CITATION OF THE AUTHORITIES.

1. The sole object of the assessment and levy sought to be enjoined herein, was for the purpose of paying off an unauthorized debt of the appellant corporation. Charter of Vanceburg and Stout's Lane T. P. Co., sec. 12, Acts 1889-90, p. 1385; Chapter 110, sec. 4302, Kentucky Statutes; Vanceburg, &c. T. P. Co. v. M. & B. S. R. R. Co., 63 S. W., 749.

2. The assessment under which the levy herein was made and sought to be enjoined by the petition filed July 5, 1897, was illegal and void. T. J. Bruce, &c. v. Vanceburg, &c. T. P. R. Co., 35 S. W., 112; Kentucky Railroad Tax Cases, 115 U. S., 336; Davidson v. New Orleans, 96 U. S., 97; Cooper v. Wansworth Bd. Works, 14 C. B. N. S., 180; Painter v. University Cambridge, 8 Mod., 148; Slaughter v. City of Louisville, 89 Ky., 123; Kentucky Statutes, sec. 4736.

3. The levy and advertisement for sale of appellees' property for taxes for year 1897, was illegal and void. Charter of Vanceburg, &c. T. P. Co., sec. 16, Act of 1889-90, p. 1385.

ADDITIONAL POINTS AND AUTHORITIES BY APPELLEE.

1. The assessment relied on is void; charter provision unconstitutional, though assessors were county assessor.

Reassessment of property not omitted, but illegally assessed could not be made.

Assessor did not call on the taxpayers, but simply copied the list from the county books.

The taxpayers had no notice and there was no provisions for notice. The taxes were payable on July 15 of each year.

2. The act is void because it does not provide for notice of the county court proceedings.

3. The plaintiff's property is situated in two districts and can not be taxed under section 4736, Kentucky Statutes.

4. The taxes for 1897 were levied on July 7, but were not due until July 15, under section 15 of the charter.

5. The taxes are sought to be collected to pay a debt and the corporation was not authorized to incur debts. (Section 12, charter.)

6. The company has turned over its property to Lewis Kennedy. (Kentucky Statutes, section 4302.)

7. If the railroads are not taxed, the individuals can not be.

8. The act is a fraud.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

The opinion heretofore rendered in the first of these cases (see Vanceburg, etc., Turnpike Co. v. Maysville, etc., R. Co., 25 R., 1404, 63 S. W., 749) was withdrawn, and a reargument ordered.   On the reargument the second case was, by consent of parties, heard with the first case, in order that the court might get more fully before it all the facts in the controversy; and we will now dispose of the two cases together.

The turnpike company was incorporated by an act of the Legislature approved April 24, 1890. See acts 1889-90, vol. 2, p. 1385, c. 1034.  By its charter appellant was authorized to construct and operate a turnpike commencing at the west end of the bridge across Salt Lick creek, thence down the Ohio river bottom, the best and most practicable route to Stout's Lane; following, so far as convenient, the existing county road.    In order to enable the company to build the turnpike as speedily as possible, and equalize the burden thereof, there was levied by the act on all species of property, including that of railways situate within the bounds of a certain taxing district, subject to taxation for State

purposes, the sum of fifty cents upon each $100 worth of taxable property each year, commencing with the year 1891, continuing until the road was built and paid for  It was al:o provided that the company might appoint an assessor to assess the property of individuals subject to taxation; his assessment to be returned to the May or June term of the Lewis county court in each year and to be subject to correction thereby. The taxes were then to be listed with the sheriff of Lewis county for collection.  As to railroad property, the Lewis county court was required, at its January or February term in each year, to appoint two commissioners to ascertain and report the number of miles and the value of the property within thirty days from this report, and such other evidence as might be introduced by any party in interest; and the judge of the county court was required to make an assessment of the property, and certify it to the railroad company.  The taxes levied were required to be listed with the sheriff for collection on or before the fifteenth of July of each year.  They were due from that date, and the sheriff might then proceed to collect and distrain therefor. Persons paying taxes became stockholders in the company to the amount of taxes paid, and certificates should be delivered to them therefor whenever they paid an amount equal to $25 until the road was completed and paid for.  The company organized as provided in the charter on June 13, 1891, and proceeded then and for each year thereafter to have the property assessed within the taxing district as provided by the charter; the order of the county court for that year as to the appointment of commissioners to assess the railroad property being made at the June term.  The taxes were placed in the hands of the sheriff for collection and the company proceeded with the construction of its pike.

T. J. Bruce and other individual taxpayers residing in the taxing district then filed a suit enjoining the collection of the taxes on the ground, among other things, that the statute was unconstitutional. The circuit court perpetuated the injunction, and on appeal to this court the judgment was affirmed. The court said: "It seems to us that so much of the act in question as attempts to provide for the assessment of the property in the taxing districk is unconstitutional and void, and that the appointment and assessment made by the appointees of the company are both invalid. But the Legislature had power to levy the tax, and to that extent the act in question is valid; and by virtue of the general law the assessor of the county should assess the property in the taxing district, and return the same as other tax lists are returned, and that the taxpayer should have the same right to obtain corrections in or modifications of the list as is allowed by the general law respecting the assessment of property for general taxation." Bruce v. Vanceburg, etc., Turnpike Co., 18 R., 35, 35 S. W., 112. After this opinion was rendered the turnpike company procured from the county court an order directing the county assessor to assess the property as indicated in the opinion, and to return his assessment to the county clerk, to be submitted to the county board of equalization.

Under this order, assessments were made for the years 1895, 1896, 1897, 1898, and 1899 by the county assessor. His assessments were submitted to the county board of equalization, and were by it approved. No assessment appears to have been made of the property of the individual taxpayers for any year previous to 1895, except those made by the appointees of the turnpike company as provided in its

charter, which was in this respect held unconstitutional in the case above referred to.    The second of the above actions was brought by Bruce and others on July 5, 1897, to restrain the sheriff from levying on or selling their property under the assessment made under the charter before the property had been assessed by the county assessor as indicated in the opinion of this court above quoted.    The subsequent assessment by the county assessor was set up in the action, and the case, as finally presented, involved the right of the turnpike company to collect the taxes at all.    The court perpetuated the injunction in that case, and also dismissed the petition in, the first action above named, in which the turnpike company undertook to collect from the railroad company its taxes.    From these judgments the turnpike company appeals.

The opinion heretofore rendered on the former appeal is conclusive upon the parties, and the validity of the charter provision as to the assessment of the property by the appointees of the company can not now be reconsidered.    The assessment of the property of the individual taxpayers by the appointees of the company has been determined to be void. Being void, it conferred no right upon the sheriff to collect taxes thereunder, and was no bar to an assessment of the property by the county assessor, for, as it was void, the property had not, in law, been assessed at all, and, not having been assessed, the case stood simply as an omission by the county assessor, to make an assessment which he ought to have made. The fact that the assessor, in making this list, did not again call on the taxpayers, does not invalidate the assessment.    They were called on for the list of their property in each year when the county assessmment was made, and they

Vol. 117]        JANUARY TERM, 1904.        283

Vanceburg & S. L. Turnpike R. Co. v. Maysville & B. S. R. R. Co.
Same v. Bruce, &c.

had ample opportunity to appear before the county board of supervisors and have any errors corrected.

It is insisted for appellees that they can not be taxed, by reason of section 4736, Ky. St., 1903, because their property lies in two districts.   By that section it is provided that whenever in any county there is in force a system of taxation for turnpike purposes under which part of such taxes are general, and part' thereof levied in turnpike road districts, then, when the same property is situated in more than one of such districts, the property shall be liable for only one district tax, which shall be that levied in the district in which is the turnpike from which the property or its owner derives the greater benefit, and this shall be determined by the fiscal court or board of county commissioners, and its judgment shall be final.   It is not averred that any such decision has been made by the fiscal court.   By the charter of appellant, the tax is levied by the Legislature on all the property in the taxing district; and, if any taxpayer seeks exoneration from it he must apply to the fiscal court or county commissioners and obtain its judgment exempting him.   Until this is done, the sheriff may go on and collect the tax, as prima facie, under the act, all property within the taxing district is subject thereto.

The turnpike company, when the collection of taxes was suspended, finding itself unable to complete its road, adopted on March 18, 1897, the following:   "It was moved and adopted by a unanimous vote of all the directors of the company that the portion of the road now completed and graded be leased to Lewis county as and for a county road until such time as the company is in a financial condition to finish the road and properly take care of and maintain the same under its charter; the company reserving the right under

284                KENTUCKY REPORTS.                [Vol. 117

Vanceburg & S. L. Turnpike R. Co. v. Maysville & B. S. R. R. Co.
Same v. Bruce, &c.

its charter to resume possession for the purpose of finishing the road at any time it is financially able to do so, and also all its rights under its charter." Under this resolution a lease was made, stating that during the litigation in regard to the collection of taxes for the construction of the road, and as the company was unable, from lack of funds, to finish the road or keep it in repair, or to build a sufficient length of road to erect a gate and collect toll, the company, in consideration of the premises, leased its road, so far as built, to the county, until it was in a condition financially to resume control; the county agreeing to surrender possession to the company when it was able and desired to retake possession and resume the work of construction under its charter. It is insisted for appellant that the company thus surrendered its franchises. The legal effect of the contract thus made is entirely different from that provided for by the free turnpike act (Ky. St., 1903, section 474b, subsection 8) which provides that, when a pike shall be sold to the county, the charter, franchises, and privileges of the company shall be at once dissolved and terminated. The road in this case was not sold to the county. The county court simply took charge of it temporarily under its general power of providing for the county highways, the pikes having been in part built upon the line of the county road. See Ky. St., 1903, section 4306.

After the turnpike company was organized, and had laid out its pike, and constructed one mile of it, it became apparent to the directors that it was necessary to get enough of the road constructed as soon as possible to erect a tollgate and collect toll, so as to keep it in repair. The officers of the company to this end borrowed money in their own name and individually, which they used in grading the road and in get-

ting ready for the completion of the first section necessary for a tollgate. The charter of the company contains the following:

"Provided, that the company shall not be permitted to issue any bonds or other written obligations of indebtedness, nor to make any contract or contracts for constructing the roads or any portion thereof until the taxes collected, with the stock subscriptions and the aid given by the county as hereinafter shown and provided for, shall be sufficient to meet and pay for said contract or contracts of construction of the road so let, et cetera." The words: "aid given by the county as hereinafter shown and provided for" refer to a following section of the charter, by which the Lewis county court was authorized to subscribe the sum of $1,000 per mile to the capital stock of the turnpike road company for each mile of the road constructed and ready for travel by the public until the entire road was finished and completed, whenever the resources of the company were sufficient, with the aid of the subscription, to enable the company to construct its road one mile or more. The length of the road was about 6 1-2 miles. At the time the officers borrowed the money referred to, the stock subscriptions of the company amounted to $1,050, and little taxes had been collected. It is insisted for appellees that the borrowing of this money was forbidden by the charter, and that the taxes sued for are sought to be collected to pay off the debts thus incurred, and not for the purpose of completing the road. We fail to see that there is any force in this position. If the directors of the company created a debt they had no power to create, this is no reason why they should not go on and complete the road and pay for it as required by law. It is no defense for the taxpayer to say, when called on for the payment of taxes which were levied by the act of Legislature until the road was constructed and paid for, that the board of directors

286        KENTUCKY REPORTS.        [Vol. 117

Vanceburg & S. L. Turnpike R. Co. v. Maysville & B. S. R. R. Co.
Same v. Bruce, &c.

had created a debt they ought not to have created.    It
is not alleged that the road has been constructed and paid
for, and it is therefore unnecessary now to consider whether
the company made a contract for the construction of its
road, or any part thereof, when the taxes collected, with the
stock subscriptions and the aid given by the county court,
as therein provided were insufficient to meet such contract,
or what would be the rights of the parties of the turn-
pike company on receiving the benefit of the contract,
and having the money to pay, should voluntarily pay for
the benefit received,    These questions are not presented by
the record, and are not passed on.    We only decide that the
borrowing of the money by the directors individually, and the
spending of it in the construction of the pike, is no defense
to the taxpayer, when sued for the taxes levied for the build-
ing of the pike.    When he pays his taxes, he will then be
a stockholder in the company; and, if the money of the com-
pany is misappropriated, he may then complain.    The proof
fails to show that the company is not in good faith attempt-
ing to carry out its charter, and to collect the taxes for the
purpose of constructing and paying for. the road as therein
provided.

In the suit to collect the railroad tax, the turnpike com-
pany set up the assessment of the property for each year
both by commissioners, as provided in its charter, and by the
Railroad Commission, as provided by the Kentucky Stat-
utes; alleging that it was not advised as to which was the
proper method of assessment, and praying the court to de-
termine and enter judgment accordingly.    On motion of the
defendants, the court required the plaintiff to elect which
assessment it would rely upon.    The plaintiff excepted, and,
under protest, elected to rely on the assessment made under
the charter.    On final hearing, the court gave judgment in

fovor of the defendants. . The act of November 11, 1892, was a general law regulating taxation. By article four it regulated the assessment and payment of taxes by railroads, not only for State and county purposes, but for the purposes of each tax district of any kind. Section seven, Acts 1891-93, p. 308. This act superseded all local or special acts regulating the assessment of railroad property, and repealed to this extent the provisions of appellant's charter providing for a different mode, of assessment of railroad property. The plaintiff's petition, in so far as it sets out the assessment made by the commissioners of the county court stated matter that was surplusage. There was no inconsistency between the allegations of the petition. The court was simply asked to determine which was the legal assessment, and this he should have done. The plaintiff stated but one cause of action, and there was no more reason for requiring an election than there would have been if the plaintiff had set up in a suit for real estate two deeds excuted by the defendant, alleging that the defendant claimed that one or the other was void, and he did not know which was valid; the same property being embraced in each. The assessments referred to were precisely the same for some of the years, and substantially the same for all. But by section seven, art. 4, p. 308, of the act of 1892, it was provided that the same rate of taxation which was levied on other real estate in any year should also be levied on railroad property. So far as appears from the record, there has been no assessment, in law, of the property of individuals in the taxing district referred to for any year previous to 1895. This being so, no tax can be collected from the railroad company for any year previous to 1895.

The judgment in each case appealed from is therefore

reversed, and the cause is remanded, for further proceedings consistent herewith.

Petition for re-hearing overruled.